# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        Plaintiff,

  v.                                                  Case No. 06-CR-336

**JOSE GODINA**
        Defendant.

## SENTENCING MEMORANDUM

Defendant Jose Godina pleaded guilty to a violation of 21 U.S.C. § 843(b), use of a telephone to facilitate a felony drug offense, and I set the case for sentencing. In imposing sentence, I first calculated the advisory sentencing guideline range. Then, to ascertain the actual sentence, I applied the criteria set forth in 18 U.S.C. § 3553(a) to the facts and circumstances of defendant's case. See, e.g., United States v. Bush, 523 F.3d 727, 729 (7th Cir. 2008).

## I. GUIDELINES

The parties agreed to a base offense level of 16 under U.S.S.G. § 2D1.1(c)(12), and that defendant qualified for a 3 level reduction for acceptance of responsibility under § 3E1.1, for a final offense level of 13. Coupled with defendant's criminal history category of VI, level 13 produces a range of 33-41 months. I found these calculations correct and adopted them accordingly.

## II. SENTENCE

**A.    Section 3553(a) Factors**

In imposing the ultimate sentence, the court must consider::

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the advisory guideline range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). The court must, after considering these factors, impose a sentence that is "sufficient but not greater than necessary" to satisfy the purposes of sentencing – just punishment, deterrence, protection of the public and rehabilitation of the defendant. Id.

The guidelines carry no more weight than the other factors in making this determination. See United States v. Carter, 530 F.3d 565, 578 (7th Cir.), cert. denied, 129 S. Ct. 474 (2008). Thus, while the district court must give respectful consideration to the guidelines in determining a sufficient sentence, Gall v. United States, 128 S. Ct. 586, 594 (2007), it must consider the parties' arguments and determine an appropriate sentence "'without any thumb on the scale favoring a guideline sentence,'" United States v. Allday, 542 F.3d 571, 573 (7th Cir. 2008) (quoting United States v. Sachsenmaier, 491 F.3d 680, 685 (7th Cir. 2007)). The court is free

to impose a sentence above or below the guideline range so long as it adequately sets forth reasons, consistent with the § 3553(a) factors, for finding the sentence appropriate for the particular defendant. United States v. McKinney, 543 F.3d 911, 913-14 (7th Cir. 2008) (citing United States v. Castro-Juarez, 425 F.3d 430, 436 (7th Cir. 2005)).

**B.    Analysis**

    **1.    The Offense**

This prosecution arose out of the government's investigation of a large-scale cocaine distribution organization in the Waukesha area, headed by Javier Aguilera, a childhood friend of defendant's. The government intercepted nineteen drug-related calls between defendant and Aguilera pursuant to a wiretap, which revealed that defendant obtained drugs from Aguilera, including some for re-sale. In all, defendant's case involved a modest amount, about ten pounds of marijuana and two ounces of cocaine.

    **2.    The Defendant**

Defendant was thirty-one years old, with a significant prior record: various juvenile adjudications, including an aggravated battery; then adult convictions for disorderly conduct twice, drug possession, misdemeanor battery three times and felony battery twice, harassment, drunk driving twice. He picked up a third offense drunk driving case during the pendency of this matter, which resulted in the imposition of a 6 months jail term shortly before I sentenced defendant. His record on supervision in the community was poor, with several prior revocations.

The record did contain some positives, especially recently. Defendant had been in a long-term relationship with Emily Martinez, with whom he shared two children, and she
3

remained supportive. Despite significant past use of alcohol, and some past use of cocaine and marijuana, all of his screens on pre-trial release were negative. After the drunk driving arrest, pre-trial services placed defendant on daily sobrietor monitoring, with which he complied. He avoided other violations during the nearly two years this case pended, which suggested that he would do better on supervision now than previously. Defendant dropped out of high school but later earned a GED and HSED. He also compiled a solid employment record when not in custody, working in the construction field. Overall, his record suggested that if he could avoid alcohol and drugs, and focus on work, he could be productive and law-abiding.

### 3. Guidelines and Purposes of Sentencing

As noted, the guidelines recommended that defendant spend 33-41 months in prison. Defendant asked for probation, while the government argued for a prison sentence. While I agreed that prison was necessary is this case, I found that a sentence below the range would suffice to satisfy the purposes of sentencing.

First, I acknowledged that I had placed on probation three other defendants who occupied low level roles in the Aguilera organization and pleaded guilty to phone counts in this case. However, defendant's involvement was somewhat greater than those three, who engaged in little or no actual dealing themselves. Two of those co-defendants, Colla and Wingert, primarily used the phone to obtain drugs for their own personal use; the third, Lapp, allowed Aguilera to store drugs in her residence and used the phone to communicate with Aguilera regarding access. Unlike those three individuals, the recorded conversations in defendant's case revealed that he engaged in re-distribution of marijuana he obtained from

4

Aguilera to other customers.[1] Therefore, while the fact that the specific offense of conviction was a phone count (rather than a substantive drug offense or a conspiracy) warranted some leniency, the specific facts of the case forestalled a sentence of straight probation.

Second, I had to consider the need to protect the public, given defendant's demonstrated penchant for violence. I accepted that the worst of defendant's conduct occurred in the past – his last battery conviction came in 2000 – but nevertheless concluded that some prison was necessary to protect the public. Third, I had to impose a sentence sufficient to deter. Defendant had served time in prison before yet continued to offend. Based on his recently improved behavior I found a prison sentence below the range sufficient to provide deterrence.[2]

Under all the circumstances, I found a sentence of 12 months and 1 day sufficient but not greater than necessary. This sentence took into account the positives discussed above, while sufficiently protecting the public, deterring and punishing. The sentence varied from the range, but because it was well-supported by the 3553(a) factors discussed herein it created no unwarranted disparity. I ran the sentence concurrently with the state drunk driving sentence and recommended that the Bureau of Prisons implement this directive by designating the state facility as the place of federal confinement. After discharge of the state sentence, I recommended that the BOP place defendant at a facility as close to Milwaukee as possible.

---

[1] It appeared that defendant personally used the cocaine he got from Aguilera.

[2] Defendant's correctional treatment needs included continued drug and alcohol testing and treatment, but I concluded that based on the other factors discussed in the text these needs had to be addressed primarily as conditions of supervised release.

5

## III. CONCLUSION

Therefore, I committed defendant to the custody of the Bureau of Prisons for 12 months and 1 day. Upon release, I ordered him to serve one year of supervised release, with a drug and alcohol aftercare and other conditions that appear in the judgment.

Dated at Milwaukee, Wisconsin, this 3rd day of December, 2008.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge